MARINE INS. CO. OF ALEXANDRIA (HOWLAND v.). See Case No. 6,798.

MARINE INS. CO. OF ALEXANDRIA (YOUNG v.). See Cases Nos. 18,162–18,-164.

MARINE NAT. BANK (DUTCHER v.). See Case No. 4,203.

MARINER (PHILLIPS v.). See Case No. 11,-105.

---

## Case No. 9,085.

### MARINERS v. The KENSINGTON.

[1 Pet. Adm. 239.] [1]

District Court, D. Pennsylvania. 1801.

SEAMEN'S WAGES — EMBEZZLEMENT OF CARGO — RESPONSIBILITY — CONTRIBUTION.

Embezzlement in a foreign port. Persons not of the crew assisted in lading, and a box plundered part of the cargo assigned to be stowed by strangers; but the crew worked occasionally with them, and were ordered by the court to contribute to the loss out of their wages.

[Cited in Spurr v. Pearson, Case No. 13,268; Edwards v. Sherman, Id. 4,298; U. S. v. Stone, 8 Fed. 251.]

[See Alexander v. Galloway, Case No. 167.]

The amount of wages was not disputed. The seamen were charged with a sum each (the whole being in the ratio of wages, averaged on the officers and crew) for a loss to

[1] [Reported by Richard Peters, Jr., Esq.]

the ship, in consequence of embezzlement of part of a box of cambrics and lawns, to a considerable amount. It appeared, from circumstances, that the embezzlement took place at the time of lading the ship in Liverpool, though it was not discovered until she was unlading at the port of Philadelphia. Several persons, not of the crew, were hired to assist in stowing the vessel at Liverpool; these had the part of the cargo assigned to them to stow, of which the box plundered composed an article; but the mate and some of the crew were always with them, and the case or box was in a situation to admit access of the crew, as well those who assisted the labourers, as any others of the seamen. The box was discovered to have been much injured and broken open with a crow-bar, or some such instrument, probably used at the time of stowage. It was contended, by the counsel for the owners of the ship, that if it could be even proved, that the labourers hired at Liverpool to assist the crew, had committed the embezzlement, they were, pro hac vice, part of the crew, and so the whole are answerable civilly, though not criminally.

BY THE COURT. If it could be proved that the labourers committed the embezzlement, without the participation, connivance or knowledge of the mariners, the latter would not be bound to contribute. The policy of the law which obliges mariners, engaged for a voyage, to be responsible for each other in such cases, does not apply when occasional labourers, or other strangers, commit depredations without the fault, negligence or connivance of all, or any part of the crew. The labourers, in this case, were not part of the crew. It is true, that if seamen are hired for a voyage, and work on board the ship, in the harbour of outfit, they may sue in the admiralty for their wages, though the voyage does not proceed. But this does not warrant the doctrine set up by the respondent's counsel, who contend that the labourers are, quoad hoc, a part for whom all the crew are responsible. There is no doubt but that the seamen are answerable for embezzlement, unless they can clearly shew either by positive evidence or strong circumstances, that it was committed by persons not of the crew. It is impossible for me to say, who committed the act in question in this cause; it may have been either a separate, or joint act; it may have been perpetrated by the labourers alone, or in company with some of the crew. But, under the uncertainty, I think the law throws the burthen of proof on the mariners. They are prima facie responsible. Some of them were mixed with the labourers, and all of them had access to the box plundered. It would give an opening to dangerous and ruinous collusions and frauds, if mariners were discharged from their responsibility, merely because occasional labourers were hired, to assist in loading a ship. Under all circumstances, I am of opinion, that the mariners

must contribute, respectively, their proportion of the loss, and I decree accordingly.

NOTE. Frequent decisions have been had, on the principles of this case. Where the crew are mixed with strangers, it behooves them to be peculiarly watchful; though, in some instances, it is severe on mariners. I have generally, however, suspected collusion, when I have enforced responsibility. One case occurred, where the theft was, by circumstances strong and convincing, fixed on those not of the crew, and I decreed against any contribution. In a cause recently decided, the mate left the vessel, in a port of St. Domingo, in possession of the blacks —went on shore without securing the hatches— some others of the crew followed his bad example—and only the cook and a sick mariner remained on board. The vessel was robbed in the night, by people from the shore, as it appeared from circumstances, to me. There was much contrariety in the testimony, but I was convinced, that part of the crew partook of the plunder. There was, beside, gross negligence, which, of itself, would incur contribution. I decreed retribution, on the usual terms. The articles lost, however, were greater in value, than the amount of wages due. I listen to testimony, to throw off responsibility, in mixed cases, in any reasonable degree satisfactory. The merchant, who increases the risk of the crew, by introducing strangers among them, cannot expect that strict and rigid proof, which is required in ordinary cases.

